### SWARTZ v. SWARTZ.

1. MORTGAGES—DISCHARGE—CONTRACTS—EQUITY.
   In equity proceedings by a father against his son to discharge certain mortgages on the father's farm, which he claimed were placed there to raise funds to defend the son on a murder charge and which the latter agreed to pay, but which, after securing assignments thereof to himself, he refused to discharge, denying the contract, evidence *held*, to sustain said agreement, and decree granting relief is affirmed.

2. SAME—PARTIES—PLEADING—AMENDMENT.
   Where the agreement sought to be enforced was made with the father alone, although the mortgaged premises were held by the entireties, after the wife's death, vesting the title in him, the father could enforce the contract.

Appeal from Kalamazoo; Weimer, J. Submitted October 12, 1916. (Docket No. 139.) Decided March 29, 1917.

Bill by George Swartz against Adelbert D. Swartz and another for the discharge of certain mortgages. From a decree for plaintiff, defendant Swartz appeals. Affirmed.

*Robert L. Campbell* (*Leland, H. Sabin*, of counsel), for appellant.

*Harry C. Howard* (*Alfred J. Mills*, of counsel), for appellee.

BIRD, J. The testimony in this case was taken before Hon. George V. Weimer, sitting upon the chancery side of the court in the Kalamazoo circuit. After hearing the testimony he rendered the following opinion:

"The bill of complaint seeks the discharge of two mortgages. Complainant is the father of defendant Swartz. The latter was convicted of murder in May, 1895, and sentenced to Jackson prison for life. In 1898 the conviction was sustained by the Supreme Court. January 1, 1900, defendant Swartz was pardoned by Gov. Pingree.

"There is no serious controversy as to most of the facts in evidence. For the purpose of this case defendant Swartz was guilty of murder, and from the time of his conviction until his release from Jackson through the exercise of the pardoning power the only prospect was a life in prison. Without regard as to whom suspicion may have been attached at the time of the arrest of several of the Swartz family in 1894, or 1895, there can be no question under the evidence that the defendant Swartz was the only one in whose defense it was necessary to spend any money, and that large sums were in fact required and spent by his father, the complainant, from the time of his arrest to his release from prison. Neither is there any question that the defendant's resources were entirely in-

adequate for the purpose. It is also conceded that complainant's farm at the beginning of this trouble was free from debt and that he had some cash on hand. At the end of those several years of trouble complainant's cash was gone and his farm mortgaged for $1,400. Much stress is laid upon the claim that the father believed in his son's innocence. What does it matter whether he did or not? Indeed, it would not be strange if the father did so believe, but whether he did or not does not seem of any particular significance to me. The emotions that may prompt a father or mother or both to stand by a son in trouble, especially such serious trouble, are not to be measured by any very fixed or practical standard. Most parents will defend their children, whether right or wrong, against a prosecution under the criminal laws.

"If, notwithstanding the conviction of the son of the crime of murder and the affirmance thereof by the Supreme Court, the father still believes in his son, then the father can hardly be said to be entirely the sort of man to commit wilful and deliberate perjury in this cause, and I am frank to say I am impressed with the truthfulness of his testimony. The fact remains that the son was guilty of murder and was doomed to pass the remainder of his days behind prison walls. He had everything to gain and nothing to lose. It is highly probable that a man in that position would. beg and plead with his own family, who were then certainly very friendly with him, to do everything possible to obtain his release, and it is also highly probable that he would then agree to any sort of demand that might have been made in the event of his release. Due to the efforts of defendant's family and his parents' money, taken from the earnings and savings of a lifetime, he served only six years instead of life. The result of those efforts and the expenditure of that money required of defendant the utmost good faith thereafter.

"It seems to me that under the proofs it is ridiculous to say that the amount of these two mortgages was borrowed and used without the defendant's knowledge or consent, and that it was not done at his request. Both parties agree that immediately upon his release he returned to the old homestead; that he cleared some of the land and for so doing was allowed five crops

therefrom; and that from those crops and his other earnings he soon had money enough to pay off and did pay off both mortgages. He returned to his home as one of the family without paying any board. He was allowed to go back on the farm, which had been mortgaged for his sole use and benefit, work the farm, and derive further use and benefit from the very substance, a portion of which had already been consumed that he might regain his liberty. The relations between him and his family seem to have been satisfactory during the first few years after his return, and in fact until or about the time it became known to his father that he had purchased one of these mortgages and taken an assignment thereof. Then it appears that trouble arose between father and son, and the son left. The one assignment of which the father had knowledge was recorded; the other was not. The father claims that the son agreed to work the farm, and out of his share of the proceeds pay and secure a discharge of the mortgages. The son claims that he was to work the farm; and out of his share of the proceeds buy the mortgages and hold them until after the death of his parents. The son disappeared in February, 1906. The father filed his bill in April following.

"The complainant claims that a contract was made. The defendant denies that that contract was made, and also that, if made, it is sufficient to justify the court in granting the relief prayed. However, the defendant does not hesitate to set up in his answer a contract which is substantially the same as that claimed by the complainant, excepting only as to his contention that he was to take an assignment of the mortgages and hold them as a claim against his parents' estate, instead of discharging them. If the contract alleged by defendant can be said to be valid and binding, it is difficult for me to see why complainant's alleged contract is not equally so.

"In view of the death of defendant's mother prior to the filing of the answers, and the further admitted fact that the father is the sole owner of the property, as survivor, it seems to me of little importance now whether the father originally owned the farm individually, or both parents as tenants by the entireties. Neither can I see how it is very material now whether

the father made the agreement alone with his son or induced the mother to join, or whether the mother was the moving party and induced the father to join in executing the mortgages in reliance upon the assur-, ance that the son, if released, would pay off and secure their discharge. The facts are that the father, now the sole owner, without any change of title, mortgaged his farm for the sole benefit of the defendant, upon the latter's assurance that, if released from prison, he would pay off and discharge the mortgage. We are not concerned with a possible situation that might have arisen if the mother had survived. The facts and the equities are strongly with the complainant. There is not one bit of tangible evidence to show that any money whatever was required for any other member of the Swartz family than the defendant. It is undisputed that $350 was borrowed in May, 1895, the very time the defendant was tried and convicted; that at least a sufficient further sum to make the whole amount to $1,000, was borrowed in October, 1896, and the further sum of $400, in May, 1897. These loans were all made prior to the disposition of the defendant's case in the Supreme Court. Defendant admits that there was an agreement and understanding and a contract between him and his parents, and he seeks to stand upon that agreement. The sole question is: Was the agreement made as claimed by him or as claimed by his father? I have no difficulty in finding, under all the facts and circumstances in evidence, that the agreement claimed by the father is the one that was actually made. I attach no importance to the question of laches except in so far as the delay of the defendant may properly be considered upon the question of credibility. His delay is one of the circumstances which I deem it proper to consider in determining whose version of this transaction and agreement is the true and correct one. While the amendment to the bill of complaint suggested in complainant's brief would not appear to be necessary, still, if the complainant is advised that it is proper and expedient for his protection, the amendment may be allowed upon such terms as may appear just to the court. The relief prayed in the bill of complaint ought to be granted and the complainant may have a decree in accordance therewith."

The views expressed in the foregoing opinion reflect so nearly the views entertained by this court, after an examination of the record, that we adopt them as the opinion in the case. We think no amendment of the bill was necessary, inasmuch as the testimony shows that the agreement which is sought to be enforced was made between plaintiff and defendant, and that plaintiff's wife was not a party thereto.

The decree will be affirmed, with costs of both courts to plaintiff.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.